**Michael SELELYO, Plaintiff,**

v.

**William R. DRURY et al., Defendants.**

**No. C–3–78–369.**

United States District Court,
S. D. Ohio, W. D.

Dec. 31, 1980.

Barry Cohen, Columbus, Ohio, for plaintiff.

Thomas M. Rose, Asst. Pros. Atty., Xenia, Ohio, for Local Bd. of Ed.

Gary E. Brown, Asst. Atty. Gen., Columbus, Ohio, for State of Ohio.

DECISION AND ENTRY HOLDING CAPTIONED CAUSE TO BE *NOT* MOOT; ORDER CONSOLIDATING MOTION FOR PRELIMINARY INJUNCTION WITH TRIAL UPON THE MERITS, PURSUANT TO F.R.C.P. 65(a)(2); FINAL PRETRIAL AND TRIAL DATES SET

RICE, District Judge.

This matter is before the Court on the issue of whether the plaintiff's cause of action has been rendered moot. The defendants contend that their actions, taken subsequent to the filing of the plaintiff's Amended Complaint, have brought them into compliance with all requirements of the law, and thus plaintiff no longer has a viable cause of action. Plaintiff, on the other hand, contends that the statutory and constitutional violations alleged in the Amended Complaint have continued, notwithstanding the actions taken by the defendants since the filing of the Amended Complaint, and thus the action has not been rendered moot.

In order to better understand the posture of this case and the merits of the parties' respective positions on the issue of mootness, it is necessary to summarize the allegations of the Amended Complaint and to summarize briefly what has occurred subsequent thereto, as set forth in an affidavit submitted by the defendants in support of their position. Thereafter, the Court will set forth its reasons for concluding that the action has not been rendered moot and that the filing of a supplemental complaint would be appropriate.

This action was commenced on December 1, 1978, on behalf of plaintiff, Michael Selelyo, a mentally retarded child, by his father as next friend, challenging Michael's school placement at Four Oaks School, a facility which served only handicapped students. An Amended Complaint was filed on December 11, 1978, wherein plaintiff alleges that placement at Four Oaks, rather than in a program wholly within the Beavercreek school system, denies him an education most appropriate to his needs in the least restrictive alternative, in violation of the Educa-

tion of the Handicapped Act, 20 U.S.C. § 1412(5)(B), and regulations thereunder; the Rehabilitation Act of 1973, 29 U.S.C. § 794, and regulations thereunder; 42 U.S.C. § 1983; the 14th Amendment; the Supremacy Clause of the U. S. Constitution; and Ohio Rev. Code § 3323.04, and § 3301–51–18, Ohio Administrative Code.

The following is a summary of the allegations contained in the Amended Complaint.

During the winter of 1977–78, prior to entering an educational facility, Michael, a resident of Beavercreek Local School District, Beavercreek Township, Ohio, was evaluated by the staff of the Miami Valley Regional Center for Handicapped Children, at the request of defendant-Drury, the Superintendent of the Beavercreek Local School District. (para. 8, 10, 15) A placement committee, including all of the evaluators, met at the Center and recommended that Michael be assigned to attend Four Oaks School, a facility administered by the Greene County Board of Mental Retardation, which serves only handicapped students, most of whom are mentally retarded. (para. 16, 17)

Plaintiff alleges that the only reason for this placement at Four Oaks was that defendants had chosen to offer no other program options for "trainable mentally retarded" children (TMR), and that the Beavercreek authorities rejected plaintiff's parents' proposal that Beavercreek offer public school classes for TMR children. (para. 18)

The recommendation to place Michael at Four Oaks was approved by defendant-Drury's designatee on April 26, 1978. (para. 19) Thereafter, plaintiff's parents requested an impartial due process hearing, pursuant to § 3301–51–16(D)(4) of the Ohio Administrative Code, which was held before Dr. Edward L. Wingard, the Impartial Hearing Officer, on June 22, 1978. (para. 20, 21) At the hearing, several witnesses, appearing on behalf of plaintiff, testified that Michael would benefit significantly from being educated in an environment which would provide him with regular, structured contact with his non-handicapped peers. They testified that the appropriate educational set-

ting for Michael was a special education program within the public schools. (para. 20)

On July 20, 1978, Dr. Wingard issued his decision upholding the committee's placement recommendation. (para. 21) Thereafter, plaintiff's parents appealed this decision to the Ohio State Board of Education. (para. 22) Defendant-Walter, Superintendent of Public Instruction of the State of Ohio, appointed Mr. William Clark to act as referee to review the record of the due process hearing, and on August 24, 1978, plaintiff submitted a written brief objecting to his educational placement to other than a public school setting. (para. 23)

The referee requested that the placement team reconvene to determine the extent to which Michael should be exposed to non-handicapped peers and to consider whether his placement at Four Oaks would provide an appropriate degree of exposure. (para. 24) On September 7, 1978, the placement team, by consensus, determined that Michael should be educated with his non-handicapped peers in "music, art, lunch, recess, and on the school bus." (para. 25) However, the team made no recommendation because it found that Beavercreek Local Schools did not offer a program for TMR children within the public school system. (para. 25) On September 15, 1978, the referee, having considered the available placement alternatives, recommended that Michael be placed at Four Oaks. (para. 27)

Plaintiff alleges in the Amended Complaint that since "September 11, 1978, plaintiff, Michael Selelyo has attended Four Oaks. His education program has included and continues to include no provision for Michael to have contact with non-handicapped children and in fact he has no such contact." (para. 29)

Plaintiff alleges further that his placement at Four Oaks School violates the aforementioned statutory and constitutional provisions. He therefore seeks an order directing that he be educated in the appropriate special education program within the Beavercreek schools; that the Ohio State Board of Education adopt standards setting

forth criteria which must be met before a mentally retarded child may be educated in an environment other than a public school; that said Board adopt standards for the education of TMR children within the public schools. Other appropriate (unspecified) relief is also sought.

Subsequent to the filing of the Amended Complaint, numerous changes have been implemented in Michael's education program. According to the affidavit of Ronald G. Ferguson, Director of Pupil Personnel for Beavercreek Local Schools, the program changes include the following:

1. Michael began to make weekly visits to West Main Elementary School on December 19, 1978, continuing until January 17, 1979, (para. 6);

2. By May 29, 1979, Michael had been scheduled to attend West Main twice weekly and had experienced "story time, indoor and outdoor recess, TV time, music, physical education, a field trip, assemblies, lunch, and one art class, (para. 7);

3. In September, 1979, Michael was reintroduced into a first grade class at West Main, and began to visit the school three times weekly, traveling back and forth between schools on a school bus, (para. 8);

4. In March, 1980, Michael began a speech and language program which involved one-half hour, two days per week with a Beavercreek school therapist, and about one-half hour, two days per week with a Four Oaks therapist, (para. 10); and

5. Activities for Michael in 1980–81 will remain similar to those in 1979–80, except that Michael will be visiting West Main for some part of each school day. He will also receive individualized speech and language therapy daily from the Beavercreek school therapist. (para. 11)

A comparison of the above statements with the allegations set forth in the Amended Complaint indicates that some of those allegations are no longer supportable. It is, for example, undisputed that since December 19, 1978, Michael's education has not been solely at Four Oaks; rather, since that date, he has been in attendance at West Main Elementary School on a gradually increasing basis with increased programming. Thus, the allegation that Michael is receiving his entire education at Four Oaks and is receiving no contact with non-handicapped peers is no longer consistant with the realities of uncontroverted facts.

█ The burden of persuasion on the issue of mootness is a heavy one which lies with the defendants. *United States v. W. T. Grant*, 345 U.S. 629, 632–33, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303 (1953); *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 490, 89 S.Ct. 1944, 1947, 23 L.Ed.2d 491 (1969). "Voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i. e.*, does not make the case moot." *United States v. W. T. Grant, supra*, 345 U.S. at 632, 73 S.Ct. at 897.

In *County of Los Angeles v. Davis, supra*, 440 U.S. at 631, 99 S.Ct. at 1383, the Supreme Court explained that "jurisdiction, properly acquired, may abate if the case becomes moot because[:]

(1) it can be said with assurance that 'there is no reasonable expectation ...' that the alleged violation will recur (citation omitted), and

(2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." (citation omitted)

The Court stated further that "[w]hen both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law." *Id.*

█ Based on the foregoing authority, the Court concludes that the present action is *not* moot. In the Amended Complaint,

and at all times thereafter, plaintiff has maintained that the defendants' failure to provide him with an education *wholly* within the Beavercreek public school system, with necessary special services, is a violation of state and federal law. From plaintiff's perspective, the key question in this litigation is whether Michael is entitled to such placement. If, after a hearing on the merits, this Court should determine that Michael is entitled to be educated wholly within the public school setting, it is obvious that his present program, under which he is educated partially at Four Oaks, which serves only handicapped students, and partially at West Main Elementary School, which serves his non-handicapped peers, would not be deemed to bring the defendants into compliance with the law. Although the changes which have heretofore been implemented in Michael's program might bring the defendants closer to the requirements of state and federal law, a determination that Michael is entitled to an education wholly within a public school setting would necessarily require the Court to conclude that a program which includes only partial scheduling and attendance in a public school falls short of what the law requires. As such, and without expressing any opinion whatsoever on the merits of the plaintiff's claims, this Court is led to the conclusion that the issues presented in the Amended Complaint continue to be "live" and that all parties herein possess "a legally cognizable interest in the outcome" of this litigation.

■ The Court believes that, without so stating, defendants have raised an implicit argument that they have voluntarily ceased engaging in illegal conduct by altering Michael's program to include contact with non-handicapped peers at West Main Elementary School. However, the Court notes that the question of whether defendants' conduct in effecting these changes is sufficient to constitute voluntary cessation of illegal conduct is, to a large extent, the crucial question of this litigation. Since the Court is not equipped to resolve this issue on the basis of the materials currently before it, the existence of this issue provides an additional reason for concluding that plaintiff's action has not been rendered moot.

■ Further, even assuming the correctness of defendants' implicit assertion that their conduct constitutes voluntary cessation, this would not necessarily render the present action moot. Such a conclusion can only be reached if the two conditions set forth above are met. *See County of Los Angeles v. Davis, supra,* at 631, 99 S.Ct. at 1383. Defendants have failed to establish these conditions. They raise no argument and provide no support for the proposition that "there is no reasonable expectation that the alleged violation will not recur." Thus, even if Michael's current placement comports with state and federal law, there have been *no assurances from the* defendants that Michael's current attendance at West Main will not at some point in the future be discontinued. Likewise, defendants have not suggested or established that Michael's current placement has "completely and irrevocably eradicated the effects of the alleged violation." The defendants having failed to satisfy the Court that these conditions have been met, it would, in the Court's opinion, be inappropriate to conclude that the plaintiff's action has been rendered moot.

■ This Court also wishes to address an additional mootness argument that could have been, but was not, raised by the defendants in their memorandum on the issue. This argument is that the plaintiff has only exhausted his administrative remedies concerning his 1978–79 individualized education program (IEP), and, since that school year has long since expired, this action was mooted when that school year ended. This argument adopts the position that administrative remedies must be exhausted to challenge each annual IEP. Thereunder, the argument would conclude, since plaintiff has failed to exhaust administrative remedies for his 1979–80 and 1980–81 IEPs, this Court lacks jurisdiction to hear the plaintiff's claims as to the IEPs implemented after the 1978–79 school year.

Such an argument was presented to the court in *Rowley v. Board of Education*, 483 F.Supp. 536 (S.D.N.Y.1980). Therein, plaintiff, a deaf child, challenged her individualized education plan for the 1978–79 school year because it failed to provide for a sign language interpreter in her classroom. Plaintiff's parents demanded and received a hearing before an independent examiner to challenge this decision. Thereafter, they appealed his adverse decision to the Commissioner of Education, who affirmed the decision not to provide plaintiff with an interpreter. *Id.* at 537.

By exhausting their administrative remedies concerning the 1978–79 IEP, plaintiff became entitled to bring an action in the federal district court for review. However, before the case went to trial, a new school year had begun, and a new IEP was due. The court pointed out that "[t]he plaintiffs . . . will not be satisfied with a mere declaration that last year's IEP improperly failed to provide interpretive services; they seek an injunction to compel such services for the current year." *Id.* at 538.

The argument presented by the defendants, in asserting the court's lack of jurisdiction, was that the plaintiffs could "not seek relief applicable to the 1979–80 school year without exhausting their administrative remedies with respect to the 1979–80 IEP." *Id.* The court rejected this argument and the mootness argument implicit therein, stating:

"If mootness were accepted as a ground for refusing judicial review, the consequence might be that Amy's IEP would never have such review. Adoption of the 1979–80 IEP, which as of the time of trial had not yet been formulated, a hearing before an independent examiner and disposition of an appeal to the commissioner would have to take place before the matter would once again be ripe for court consideration. This case would not be reached until mid-school year at the earliest, and would be moot by the end of the year." *Id.*

Because of the logistics of the situation, the Court concluded, "the conduct complained of is 'capable of repetition, yet evading review,' and calls for the invocation of a recognized exception to the mootness doctrine, *e. g., Nebraska Press Association v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 . . . (1976)" 483 F.Supp. at 538. The Court further determined that since it had jurisdiction to review the 1978–79 IEP, based on 20 U.S.C. § 1415(e)(2), "there is no need to find jurisdiction over the 1979–80 IEP." *Id.* Since the statutory provision empowered the Court to grant any "appropriate relief," the Court determined that "an injunction applicable to the 1979–80 school year is an appropriate form of relief." *Id.*

Similar reasoning can be applied to the case at bar. Plaintiff originally objected to the IEP developed for Michael for the 1978–79 school year because it did not bring him into contact with non-handicapped children to the maximum extent possible, in the least restrictive manner appropriate to his needs. The 1978–79 IEP contained no provision for Michael to have contact with non-handicapped peers. It was this IEP which the plaintiff's parents challenged through the administrative process prior to filing the Complaint and Amended Complaint in this Court.

Using the reasoning from *Rowley*, it is appropriate for this Court to conclude that even if this action fell within the mootness doctrine, it also falls squarely within the exception because the conduct complained of is 'capable of repetition, yet evading review.' The fact that this suit was commenced two years ago but has yet to come up for trial indicates the propriety of applying this well-established exception to the mootness doctrine. *See Storer v. Brown*, 415 U.S. 724, 737 n.8, 94 S.Ct. 1274, 1282 n.8, 39 L.Ed.2d 714 (1974); *American Party of Texas v. White*, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974). Requiring the plaintiff to exhaust his administrative remedies as to each annual IEP might well prevent a challenge from being ripe for judicial review prior to the end of the school year for which the IEP is formulated.

That the plaintiff did not institute this action under 20 U.S.C. § 1415(e)(2) does not change the Court's opinion or render reliance on *Rowley* misplaced. The *Rowley* court determined that invocation of this provision was an additional reason for not finding the case moot; it was not the sole reason. In the Amended Complaint, plaintiff seeks specific remedial orders from the Court and "other appropriate relief." Again, without expressing any views as to the merits of plaintiff's claims, this Court could ultimately conclude that an injunction applicable to the present school year is an appropriate form of relief.

The only other point which warrants discussion is the plaintiff's reliance on events occurring subsequent to the filing of the Amended Complaint to suggest that additional violations have occurred. For example, in the plaintiff's Memorandum of Law in Support of Motion for Preliminary Injunction and Consolidated Hearing on the Merits Against Beavercreek Local District Defendants (Doc. # 16), the plaintiff seems to suggest that the amount of time that Michael spends on a bus in transit between Four Oaks and West Main constitutes an additional violation. Plaintiff contends therein that "Michael is also being harmed by the manner in which his program is set up. The most obvious instance of such harm lies in the eleven hours each week that Michael spends riding busses ..." (Doc. # 16, at 37). By way of footnote, the plaintiff implies that this arrangement violated 45 C.R.F. § 121a. 552(a)(3), which requires school districts to insure that "Each handicapped child's educational placement ... is as close as possible to the child's home." *Id.*, n.13. When the Amended Complaint was filed, no such allegation was included since, at that time, Michael had not yet commenced his visits to West Main School.

Although the Court has determined that the present action is not moot, it is not necessarily appropriate for the Court to consider allegations of violations that have occurred subsequent to the filing of the Amended Complaint. If the plaintiff wishes to present such allegations and/or wishes to rely upon them as additional support for a preliminary or permanent injunction, the plaintiff should file a supplemental complaint pursuant to Rule 15(d), Fed.R. Civ.Proc., which provides in pertinent part:

"Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented ... If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying time therefor."

As a practical matter, it makes little sense to consider only the events and allegations contained in the Amended Complaint. As a matter of judicial economy, and for the sake of providing a complete and adequate remedy, if plaintiff prevails on the merits, the plaintiff should present any and all additional allegations concerning the defendants' illegal conduct, occurring subsequent to the filing of the Amended Complaint. Therefore, plaintiff is urged to submit a supplemental pleading which sets forth those allegations of additional violations occurring subsequent to December 19, 1978, if the plaintiff intends to rely upon them to support his position that he is entitled to the relief sought. Plaintiff is given leave of court to file such a supplemental complaint, provided same is filed not later than 14 days from date of receipt of notice of this decision. The defendants will then be given 14 days from date of service of the supplemental complaint to file any responsive pleading thereto.

A brief preliminary pretrial scheduling conference was held on Wednesday, December 24, 1980.

The plaintiff will be seeking to have his experts view the plaintiff's classes as they are conducted. The defendants' expert will be deposed, as well as the defendants' psychologists and teachers that are involved. The defendants will be securing additional expert witnesses and will be deposing the plaintiff's expert witness.

Date to reveal identity of all witnesses, together with a brief synopsis of their testimony: March 1, 1981.

The parties are ordered to "cut off" discovery fifteen days in advance of the trial date, to wit: April 12, 1981. This "cut off" date is inflexible and can only be modified by agreement of counsel or by the Court, upon a filing of a motion showing good cause. For purposes of this pretrial order, the term "discovery" includes any depositions taken for perpetuation of testimony purposes and sought to be used at trial.

Leave of court granted to file whatever motions not directed to pleadings deemed necessary (including motions for summary judgment) not later than: March 1, 1981.

Jointly prepared Final Pretrial Order, in the form suggested by the enclosed materials, is to be filed by 4:30 p. m. on Monday, April 13, 1981.

Date of Final Pretrial Conference is Thursday, April 16, 1981 at 4:30 p. m. This pretrial conference will be had by way of telephone conference call. The attorneys listed below need not appear in chambers for such pretrial but need only wait by their telephones at the appointed time.

Trial on the merits, before the Court sitting as the trier of fact, is set for the week of April 27, 1981, with an estimated trial time of three days.