CITY CAPITAL ASSOCIATES LIMITED PARTNERSHIP, Cardinal Holdings Corp. and Cardinal Acquisition Corp., Plaintiffs,

v.

INTERCO, INC., et al., Defendants.

INTERCO, INC., Counterclaimant and Third Party Plaintiff,

v.

CARDINAL ACQUISITION CORP., Cardinal Holdings Corp., City Capital Associates Limited Partnership, Counterclaim Defendants,

and

Steven M. Rales, Mitchell P. Rales, City GP I, Inc., City GP II, Inc., ASM Group, Inc. and Arthur M. Bylin, Third Party Defendants.

Civ. A. No. 88–424–JJF.

United States District Court, D. Delaware.

Sept. 23, 1988.

See also, 8th Cir., 858 F.2d 444.

& Flom, New York City. Rodman Ward, Jr., and Randall Thomas–Peterhans, of Skadden, Arps, Slate, Meagher & Flom, Wilmington, Del., Steven D. Goldberg (argued), and John G. Mulford, of Theisen, Lank, Mulford & Goldberg, Wilmington, Del., for plaintiffs.

Michael W. Schwartz (argued), of Wachtell, Lipton, Rosen & Katz, New York City. John Michael Clear, and Terrence J. O'Toole, of Bryan, Cave, McPheeters & McRoberts, St. Louis, Missouri. Charles F. Richards, Jr. (argued), of Richards, Layton & Finger, Wilmington, Del., for defendants (Except Oberly and Harkins) and Counterclaimant and Third Party Plaintiff.

Grover C. Brown (argued), of Morris, James, Hitchens & Williams, Wilmington, Del., for defendants Oberly and Harkins.

FARNAN, District Judge.

## OPINION

Plaintiff and counterclaim defendant, City Capital Associates ("City Capital"), brings this motion for a preliminary injunction against Interco Incorporated ("Interco"), the Attorney General of the State of Delaware, Charles M. Oberly, III, and the Secretary of State of Delaware, Michael E. Harkins, to enjoin the application and enforcement of the Delaware Business Combinations Statute, 8 *Del.C.* § 203 ("§ 203") on the grounds the statute is unconstitutional on its face and as applied. Defendant and counterclaim plaintiff, Interco, seeks a preliminary injunction of City Capital's tender offer contending the offer was commenced in violation of certain disclosure provisions of the Williams Act, sections 14(d) and 14(e) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(d), (e), and the rules and regulations promulgated thereunder. This Court has jurisdiction over the case under 28 U.S.C. § 1331.

Since this case involves a web of factual and procedural threads, the Court will review what led to the parties' current cross-motions for preliminary injunctions.

Robert E. Zimet (argued), and Jay B. Kasner, of Skadden, Arps, Slate, Meagher

## I. FACTUAL AND PROCEDURAL BACKGROUND.

### A. *The Parties and the Bidding.*

Interco, formerly the International Shoe Company, is a Delaware corporation that maintains its principal place of business in St. Louis, Missouri. The company's consumer products are sold under several common brand names, including Christian Dior, Converse, Ethan Allen, Florsheim, and London Fog. Interco's total assets amount to $2 billion; shareholders' equity totals $1.2 billion. The company's common stock, of which there are over 36 million outstanding shares, is traded on both the New York and Midwest Stock Exchanges and is registered under the Securities Exchange Act of 1934 ("Exchange Act").

City Capital is a Delaware limited partnership. The partnership is owned by two limited partners, Patrick W. Allender and Michael G. Ryan, each of whom owns a one percent interest, and two general partners, City GP I, Inc. ("GP I") and City GP II, Inc. ("GP II"), each of which owns a forty-nine percent interest in City Capital. Steven Rales is the sole shareholder of GP I, and Mitchell Rales, Steven's brother, is the sole shareholder of GP II. Each of the Rales brothers owns more than $10 million in assets. Moving down the corporate structure, City Capital owns one hundred percent of Cardinal Holdings Corporation ("Cardinal Holdings") which, in turn, owns one hundred percent of Cardinal Acquisition Corporation ("Cardinal Acquisition"). Cardinal Acquisition is the entity involved in the contemplated takeover of Interco.

In the late spring and early summer of 1988, City Capital began purchasing Interco stock. On July 28, 1988, City Capital reported that it had bought approximately 8.7% of Interco's outstanding common shares. Also on July 27, City Capital made its first "friendly" bid for Interco, offering to pay $64.00 per share of outstanding common stock in a negotiated merger. On August 8, 1988, City Capital increased its bid to $70.00 per share which Interco's Board of Directors rejected.

One week later, on August 15, City Capital commenced a $2.6 billion hostile tender offer for all of Interco's outstanding shares at $70.00 per share. Interco's Board of Directors recommended on August 22 that Interco's shareholders reject City Capital's offer and not tender their shares. Most recently, on September 10, 1988, City Capital increased its bid to $72.00 per share.

### B. *The Procedural Setting.*

On July 27, 1988, City Capital, having acquired 8.7% of Interco's stock, filed a Schedule 13D with the Securities and Exchange Commission ("SEC"). Also on July 27, City Capital commenced two actions, one in the United States District Court for the District of Delaware, and the other in the Delaware Court of Chancery. In this Court, City Capital seeks, *inter alia,* declaratory judgments that its Schedule 13D is in compliance with federal law and that Delaware's so-called "Anti–Takeover Statute," 8 *Del.C.* § 203, is unconstitutional. In the Court of Chancery, City Capital alleges various breaches of fiduciary duties by Interco's Board of Directors.

On August 15, the same day that City Capital initiated its $70.00 per share tender offer, Cardinal Acquisition, Cardinal Holdings, GP I, GP II, and both Rales brothers filed a Schedule 14D–1. Also on the 15th, City Capital amended its original complaint to request a declaratory judgment that this filing complied with federal requirements.

On August 18, Interco filed a motion in this Court, seeking to have City Capital's counsel disqualified for an alleged conflict of interest. After briefing and argument, the Court denied Interco's motion on August 20.

On August 22, Interco commenced suit in the United States District Court for the Eastern District of Missouri ("St. Louis action"), seeking declaratory and injunctive relief, alleging that City Capital had violated Sections 7, 14(d), and 14(e) of the Exchange Act, 15 U.S.C. §§ 78g, 78n(d), and 78n(e), and the regulations promulgated thereunder.

By order dated September 7, 1988, the Missouri court stayed the action, pending disposition of the matters before this

Court. *Interco Inc. v. Cardinal Acquisition Corp.*, No. 88–1617C(3), slip op. at 10–11 (E.D.Mo. Sep. 7, 1988). Two days later, on September 9, Interco filed an answer, along with counterclaims, and third party claims in this Court, seeking injunctive and declaratory relief on the grounds that City Capital had violated the disclosure requirements of the Williams Act. Also on the 9th, Interco filed its motion for preliminary injunction on its counterclaims and third party claims. City Capital's motion for preliminary injunction on its amended complaint had previously been filed on August 24. Oral arguments on these cross-motions for preliminary injunctions were heard on September 16, 1988. This Opinion shall constitute this Court's findings of fact and conclusions of law as required by F.R.C.P. 52(a).

## II. DISCUSSION.

### A. *Preliminary Injunction Standard.*

To succeed on a motion for a preliminary injunction in the Third Circuit, the moving party must establish:

(1) a reasonable probability of eventual success in the litigation, and (2) that irreparable injury will ensue if relief is not granted. In addition, the court may consider (3) the possibility of harm to other interested persons from the grant or denial of relief, and (4) the public interest. *Constructors Ass'n of Western Penna. v. Kreps*, 573 F.2d 811, 815 (3d Cir.1978); *Delaware River Port Auth. v. Transamerica Trailer Transp., Inc.*, 501 F.2d 917, 919–20 (3d Cir.1974).

*Kennecott Corp. v. Smith*, 637 F.2d 181, 187 (3d Cir.1980). For the reasons discussed below, the applications of both parties for preliminary injunctions are denied. The Court concludes that neither party has demonstrated with a reasonable probability that it would ultimately be successful on their claims in this litigation.

### B. *Constitutionality of Section 203.*

#### 1. Background.

In February 1988, the Delaware General Assembly enacted a Business Combinations Statute commonly referred to as an "anti-takeover" statute, 8 *Del.C.* § 203 ("§ 203"), which restricts the ability of an "interested stockholder" to merge with, sell, lease, or enter into other combinations with that company for a period of three years after becoming "interested". § 203(a), (c)(3)(i-v). Generally, a stockholder becomes "interested" when he or she acquires fifteen percent or more of the outstanding voting stock. § 203(c)(5). However, § 203 does not apply if (1) the board of directors of the corporation approves either the transaction which results in a stockholder becoming interested or any subsequent combination with that stockholder; (2) the stockholder receives 85% or more of the outstanding voting stock of the corporation in the transaction which resulted in his or her becoming interested, excluding shares owned by directors who are also officers and certain employee stock plan shares; or (3) the combination is approved by the board and authorized by 66⅔% of the outstanding voting stock which is not owned by the interested shareholder. § 203(a). A Delaware corporation may also expressly elect not to be governed by § 203 if it does so in its original certificate of incorporation, or if the board amends its bylaws to opt out of § 203 within 90 days of the effective date of the statute, or if the stockholders adopt an amendment to the certificate of incorporation or bylaws by at least a majority of shares entitled to vote. § 203(b)(1–3). Furthermore, § 203 does not apply if the corporation has no voting stock listed on a national securities exchange nor in a variety of other situations. § 203(b)(4–6).

City Capital contends in its motion for a preliminary injunction that § 203 is unconstitutional because it (1) is preempted by the Williams Act, (2) places an undue burden on interstate commerce in violation of the Commerce Clause, and (3) improperly delegates governmental authority to boards of private corporations. Since the enactment of § 203 seven months ago, two judges in this District have considered Williams Act and Commerce Clause challenges to § 203 and concluded that the statute is constitutional. *R.P. Acquisition Corp. v. Staley Continental, Inc.*, 686

F.Supp. 476 (D.Del.1988); *BNS, Inc. v. Koppers Co.*, 683 F.Supp. 458 (D.Del.1988). In *BNS*, Chief Judge Schwartz suggested that reconsideration of § 203's constitutionality might be warranted if evidence could be developed showing that application of the statute harms shareholders by preventing a sufficient number of "hostile to the end" tender offers, 683 F.Supp. at 472, because such a result may thwart the purposes of the Williams Act and require a finding that although § 203 is constitutional on its face it is unconstitutional in its application. In this regard, the plaintiffs in *Staley* presented the court with Williams Act claims and supported them with statistical data and affidavits allegedly showing that the application of § 203 did harm stockholders by preventing a sufficient number of tender offers. The court in *Staley*, however, held that the plaintiffs' statistical evidence was insufficient to support a conclusion that § 203 as applied is unconstitutional.

2. Williams Act and Commerce Clause Claims.

 In this case, the thrust of City Capital's argument is that § 203 provides incumbent management with veto power over any hostile or unsolicited tender offer. City Capital alleges that this veto power is unconstitutional because it frustrates the purpose of the Williams Act and therefore violates the Supremacy Clause. City Capital concedes that the purpose of the Williams Act is to provide complete disclosure to protect shareholders when deciding whether or not to tender their shares; however, City Capital argues that corporate board decisions about business combinations which would occur subsequent to the success or failure of a tender offer frustrate the purpose of the Williams Act. In support of this theory, City Capital submitted an updated version of the statistical data and supporting affidavits that the plaintiffs submitted in *Staley*. This data purports to show that the application of § 203 deters tender offers which may have been beneficial to shareholders. City Capital claims that because hostile tender offers have no meaningful chance for success

under § 203 shareholders are being deprived of the opportunity to decide whether or not to tender their shares and, thus, they are harmed by this lost opportunity and the purposes of the Williams Act are frustrated.

City Capital's Commerce Clause claims build on their Williams Act arguments that § 203 deters and prevents tender offers. City Capital asserts that since § 203 deters tender offers it also deters nationwide tender offers and thus places an undue burden on interstate commerce. Furthermore, City Capital argues that § 203 violates the Commerce Clause because the target corporation in this case, Interco, has minimal contacts with the State of Delaware. City Capital claims that Interco has no assets, facilities or employees in Delaware and that only twenty-nine shareholders out of 12,500 reside in Delaware. City Capital alleges that these facts constitute a violation of the Commerce Clause because Delaware seeks to regulate a tender offer that has greater impact outside Delaware than within. Finally, City Capital argues generally that § 203 violates the Commerce Clause because it fails to promote the interests of shareholders.

City Capital has presented very little evidence in this case that has not previously been considered by courts in this district. This Court is persuaded that the analysis and rationale applied in those prior cases with regard to the Williams Act preemption claims and the Commerce Clause claims were correct and thus adopts them here. The Court acknowledges that City Capital has submitted an updated version of the data submitted in *Staley*, but concludes that the data submitted to this Court has not changed significantly from the data submitted to the court in *Staley*. The limited opportunity which *BNS* left for future constitutional challenges of § 203 requires a much greater evidentiary showing than that which has been presented here.

3. Delegation of Authority.

 The only new issue which City Capital raises here is that the provisions of § 203 improperly delegate governmental

authority to the boards of private corporations in Delaware. City Capital argues that § 203 delegates to a target company's board of directors the authority to invoke "the drastic terms" of that legislation. Furthermore, City Capital argues that § 203 violates the Due Process Clause of the Fourteenth Amendment because the boards of target corporations are not disinterested in whether or not the terms of § 203 will apply, and the statute fails to provide any standards or guidelines for boards to determine whether to apply § 203 in a given transaction or combination.

The Court concludes that § 203 is not an improper delegation of governmental authority to private persons because it is not a delegation of governmental authority. Section 203 permits a corporation to opt out of the terms of § 203. If corporate boards opted out of § 203, thus electing not to be governed by the terms of that legislation, it is unlikely that City Capital would argue that § 203 improperly delegates governmental authority. The ability to opt out of § 203 merely permits corporate boards to decide corporate matters over which they already have control under Delaware's General Corporation Law. *See, e.g.,* 8 *Del.C.* §§ 251–252 (requiring board approval of mergers), § 271 (requiring board approval for sales of all or substantially all of a corporation's assets). The Delaware state government does not have authority to decide whether, in a specific case, a particular business combination would benefit a particular corporation. The government, therefore, cannot delegate authority it does not possess.

Because the Court concludes that City Capital has not demonstrated a reasonable probability of success on any of its claims City Capital's motion for preliminary injunction must be denied.

## C. *Interco's Disclosure Allegations.*

Interco's motion for a preliminary injunction is based on the following alleged violations of the disclosure provisions of the Williams Act: (1) that City Capital and the third party defendants have falsely stated that the "preferred stock" which City Capital intends to issue as part of the tender offer financing, is equity rather than debt and that therefore they have failed to disclose that such financing would violate the Federal Reserve Board's margin regulations; (2) that City Capital and the third party defendants have failed to disclose that Drexel and Chase are "bidders" for purposes of this tender offer and that therefore the requisite disclosures concerning Drexel and Chase have not been made; and (3) that City Capital and the third party defendants have failed to disclose that they are illegally evading the requirements of the Hart–Scott Act. Interco claims it will be irreparably harmed by these alleged disclosure violations and seeks to preliminarily enjoin City Capital's tender offer until all required disclosures have been made.

Sections 14(d) and 14(e) of the Exchange Act, 15 U.S.C. §§ 78n(d), 78n(e), require disclosure of all material facts in connection with any tender offer. These provisions were designed to "insure that public shareholders who are confronted by a cash tender offer for their stock will not be required to respond without adequate information." *Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 58, 95 S.Ct. 2069, 2075–2076, 45 L.Ed.2d 12 (1975). All material information must be disclosed, whether or not specifically required by §§ 14(d) and 14(e). *Revlon, Inc. v. Pantry Pride, Inc.,* 621 F.Supp. 804, 808 (D.Del.1985). A "material" fact is one that "would have assumed actual significance in the deliberations of the reasonable shareholder" in considering whether to tender his or her shares. *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

There is, however, a limitation on the duty to disclose under the Williams Act. Where there exists a good faith dispute as to facts or an alleged legal violation, the Williams Act only requires disclosure of the dispute. *See Warner Communications, Inc. v. Murdoch,* 581 F.Supp. 1482, 1502 (D.Del.1984); *Avnet, Inc. v. Scope Industries,* 499 F.Supp. 1121, 1124–26 (S.D.N.Y.1980). There are good reasons

for this limitation. A tender offeror should not be placed in a position of being forced to either admit liability, while he or she disputes it, or violate the securities law by failing to disclose the alleged and disputed violation. *See id.* at 1490, 1502. As long as the tender offeror discloses to the target shareholders that a good faith dispute exists as to an alleged violation of law, a shareholder has sufficient information to make a rational and informed decision whether to tender his or her shares. If possible, market conditions should not be influenced by a court tipping a delicate balance in favor of either bidders or management. *See Duro–Test Corp. v. TCA–IV Limited Partnership,* No. 87–4418, transcript at 15 (D.N.J. Dec. 9, 1987) (bench order).

City Capital has made two disclosures that address Interco's allegations. The first disclosure appears on page 39 of City Capital's August 15 purchase offer. City Capital admits in this disclosure that recent federal court decisions have cast some "uncertainty" on the legality, under the margin regulations, of partially financing a tender offer with securities, such as the instant ones, designated as preferred stock. City Capital states that it believes it is in compliance with the margin regulations but concedes that a successful challenge to the preferred stock financing under the margin regulations could "impair the purchaser's ability to obtain financing for the offer." On September 6, 1988, City Capital sent Interco's shareholders a supplemental purchase offer. In this supplement, City Capital informs Interco's shareholders of Interco's St. Louis action filed on August 22. It summarizes and restates in detail Interco's disclosure allegations with respect to the margin issue, the bidder issue and the Hart–Scott issue. City Capital also disputes Interco's allegations in this supplemental purchase offer, stating its belief that federal law has been complied with. And, City Capital again concedes in the disclosure that its ability to obtain tender offer financing could be adversely affected if Interco succeeds on any of its claims in the St. Louis action.

The Court will therefore address *seriatim* whether these disclosures reflect a good faith dispute with respect to each of the alleged violations.

1. The Debt/Equity and Margin Issues.

■ As a preliminary matter, it should be understood that the Court must adhere to the precedent in this Circuit that a party does not have standing to maintain a private right of action under Section 7 of the Exchange Act and the margin regulations promulgated thereunder. *Walck v. American Stock Exchange, Inc.,* 687 F.2d 778, 788 (3d Cir.1982). The Court is also aware that Interco has already filed a substantive margin violation claim in the Eastern District of Missouri, a jurisdiction where a party does have standing to raise such a claim.

There is an obvious relationship in this case between the margin issue and the question whether the preferred stock is debt or equity. City Capital expects to obtain financing for its $2.6 billion takeover from two principal sources. It plans to borrow $1.225 billion from a syndicate of banks led by Chase. Drexel is supposed to finance most or all of the remaining $1.375 billion of the transaction by selling Cardinal Acquisition preferred stock. Regulation G, promulgated under Section 7 of the Exchange Act, provides, in pertinent part:

No lender ... shall extend any purpose credit, secured directly or indirectly by margin stock in an amount that exceeds the maximum loan value of the collateral securing the credit....

12 C.F.R. § 207.3(b) (1987). The "maximum loan value" of any margin stock other than options is fifty percent of the stock's current market value. *Id.* § 207.7(a). In addition, an interpretive ruling issued by the Federal Reserve Board in 1986 concludes that where a shell subsidiary of a company finances a tender offer by issuing unsecured debt securities, such debt securities "would be presumed to be indirectly secured by the margin stock to be acquired by the shell acquisition vehicle." *Id.* § 207.112(b, e). Cutting through this verbiage, the heart of the dispute is simply whether the preferred stock to be issued by

Cardinal Acquisition is equity, or in fact debt. If it is debt, the margin regulations clearly would be violated, but if the stock is equity, there is no margin violation.

Interco's position is that the preferred stock is debt. Interco alleges that Cardinal Acquisition will be forced to redeem the preferred stock after three months because it will not be able to bear the economic burdens of an increasing dividend rate associated with the stock and the nondeductibility of dividends paid. Interco also alleges that City Capital intends to sell off much of Interco's assets once Interco is acquired and that this would necessarily trigger an offer to redeem the stock pursuant to the purchase offer. In essence, Interco characterizes the financing arranged by Drexel as a "bridge loan" that violates the margin requirements. City Capital counters that the preferred stock has all the indicia of equity (including its denomination, the right of preferred stockholders to vote, the preferred stockholders' junior status vis-a-vis creditors in the event of liquidation, and the inability of preferred stockholders to force a declaration of dividends or accelerate repayment of the capital contribution) and that City Capital has no immediate intention to redeem the preferred securities.

Whether the preferred stock is debt or equity is a close call. The Court finds that a genuine and good faith dispute exists on this issue. Therefore, the Court concludes that City Capital has met its disclosure obligations by informing Interco's shareholders of this dispute in the purchase offer and its supplement. The Court does not reach the merits of this claim because a party that does not have standing to raise the issue directly should not be permitted to litigate it indirectly.

2. The "Bidder" Issue.

■ Section 14(d)(1) of the Exchange Act provides, in pertinent part:

It shall be unlawful for any person, directly or indirectly, ... to make a tender offer for ... any class of any equity security ... if, after consummation thereof, such person would, directly or indirectly, be the beneficial owner of more than 5 percentum of such class,

unless ... such person has filed with the Commission a [Schedule 14D–1] statement.

15 U.S.C. § 78n(d)(1). Pursuant to the regulations promulgated under this section, a "bidder" is defined as "any person who makes a tender offer or on whose behalf a tender offer is made." 17 C.F.R. § 240.14d–1(b)(1).

Interco alleges that Drexel is doing more than just financing this tender offer. Interco points to the 29–36% equity interest in Cardinal Acquisition that Drexel will receive if the tender offer succeeds, as well as the substantial brokerage fees. City Capital counters that the 29–36% equity interest is a mere fee and does not convert Drexel into an entity that controls the tender offer.

■ The Court concludes that Drexel is not a bidder and, thus, it need not make Schedule 14D–1 disclosures. Further, the parties' dispute on this issue has been adequately disclosed by City Capital in its supplemental purchase offer. Interco has simply failed to demonstrate a reasonable probability of success on its argument that the tender offer was made by, or on behalf of, Drexel. At the same time, however, the Court takes this opportunity to note that Drexel has gotten dangerously close to the point at which this Court would not hesitate to classify Drexel as a bidder. However, based on the record at this juncture, the Court must rule in favor of City Capital and Drexel on this issue.

Since the Court has concluded that Drexel is not a bidder, then, under the facts of this case, *a fortiori* Chase is not a bidder. Chase's fees are less significant than Drexel's and the bank would only receive a one percent equity interest in Cardinal Acquisition upon completion of the tender offer. Also, the Court again concludes that City Capital has made adequate disclosures to Interco's shareholders in the supplemental purchase offer of a good faith dispute as to the existence of a federal securities violation on the bidder issue.

3. The Hart–Scott Issue.

■ The Hart–Scott Act, 15 U.S.C. § 18a, imposes filing and waiting period

requirements on certain persons in the case of a tender offer. The Act applies not only to entities making an acquisition, but also to entities that "control" the entity making the acquisition. *See* 16 C.F.R. § 801.1(a)(1) (1987). Control of an entity is defined as holding an ownership interest of fifty percent or more. *See* 16 C.F.R. § 801.1(b)(1).

Interco alleges that the Rales brothers have violated the Hart–Scott Act by illegally evading its requirements. Specifically, Interco relies on a 1978 agency ruling that states:

> Any transaction(s) or other device(s) entered into or employed for the purpose of avoiding the obligation to comply with the requirements of the act shall be disregarded, and the obligation to comply shall be determined by applying the act and these rules to the substance of the transaction.

16 C.F.R. § 801.90. Interco goes on to state that, although each Rales brother owns only a 49% interest in City Capital, the elaborate structure of shell entity upon shell entity evidences a device designed to evade the requirements of the Hart–Scott Act. City Capital counters that the one percent interests held by Allender and Ryan represent legitimate rewards for loyal employees.

The Court concludes that Interco has failed to establish that the Rales brothers purposefully designed this business structure to avoid the Act. Although the structure of entities utilized by the Rales brothers may be suspect, Interco has failed to demonstrate it is illegal. Thus, Interco has failed to show a reasonable probability of success on the merits.

### III. CONCLUSION.

For the reasons set forth above, this Court will deny both parties' motions for preliminary injunctions. An Order consistent with this Opinion will be entered.