**ARVIN INDUSTRIES, Plaintiff,**

v.

**Ismanto WANANDI, a/k/a Edward Ismanto Wanandi, Defendant.**

**No. IP 89–182–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Aug. 4, 1989.

---

Ronald E. Elberger, Bose McKinney &
Evans, Indianapolis, Ind., and Dewey Bal-

lantine Bushby Palmer & Wood, New York City, for plaintiff.

James A. McDermott, James A. Strain, and Anne N. DePrez, Barnes & Thornburg, Indianapolis, Ind., and Wachell Lipton Rosen & Katz, New York City, for defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

McKINNEY, District Judge.

### I. *Procedural Background:*

Plaintiff Arvin Industries filed this action in February of this year seeking injunctive relief and declaratory judgment against defendant Ismanto Wanandi. The gist of Arvin's original Complaint was that Wanandi, who is an Indonesian citizen, had amassed over 5% of Arvin's stock, but had failed to file a complete and accurate Schedule 13D with the Securities and Exchange Commission under Section 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d) and the regulations thereunder. Arvin alleged that Wanandi's 13D filing failed to set forth his relationship with the Indonesian military, his inability to acquire the company, and his true purpose in purchasing the stock. Shortly after filing its Complaint Arvin contacted this Court concerning possible problems with service of process on the defendant and a hearing was set. However, defendant's attorneys agreed to accept service for him. Soon thereafter Arvin moved this Court for expedited discovery.

Wanandi then moved to dismiss the Complaint, arguing that he had filed a complete Schedule 13D, and that he had supplemented his original filing to include the allegations contained in Arvin's complaint. Wanandi opposed the motion for expedited discovery and moved to stay discovery pending resolution of the motion to dismiss. This Court held in abeyance those requests pending consideration of the dismissal motion.

One week later Arvin filed its Amended Complaint in which it realleged the thrust of its first Complaint and added several additional theories under the Securities Exchange Act of 1934. Specifically, Arvin now makes the following allegations, which need to be set forth at some length in order to set the framework for resolution of this motion:

1. Wanandi has violated Section 13(d) of the Act (15 U.S.C. § 78m(d)) in relation to his Schedule 13D filings by:

a. failing to disclose his Indonesian military affiliations (Count One, ¶¶ 31-42);

b. failing to disclose financial background information (Count One, ¶ 43);

c. failing to disclose his actual purpose in buying Arvin stock (Count One, ¶¶ 44-45); and

d. failing to disclose his alleged violations of Section 7(f) of the Act relating to margin requirements (Count Six, ¶¶ 76-77).

II. Wanandi has violated Section 13(d)(3) of the Act (15 U.S.C. § 78m(d)(1), (3)) with respect to his Schedule 13D filing by failing to disclose that he is part of a group for the purpose of acquiring Arvin shares (Count Two, ¶¶ 48-54).

III. Wanandi has violated Section 9(a) of the Act (15 U.S.C. § 78i(a)) by making secret accumulations of stock and filing false and misleading Schedules in order to cause Arvin to fear takeover and therefore enter into a business relationship with Wanandi and his affiliates (Count Three, ¶¶ 55-59).

IV. Wanandi has violated Section 10(b) of the Act (15 U.S.C. § 78j(b)) and Rule 10b-5 by omitting material facts as part of a device, scheme, or artifice to defraud Arvin and its shareholders (Count Four, ¶¶ 60-65).

V. Wanandi has violated the margin requirements promulgated under Section 7(f) of the Act (15 U.S.C. § 78g(f)) by using 14.5 million dollars of credit to purchase 22.5 million dollars of Arvin stock, with more than 50% of the total purchase price being on margin (Count Five, ¶¶ 66-75).

Arvin does not seek money damages, but rather requests injunctive and declaratory relief prohibiting Wanandi from engaging in certain acts with respect to Arvin and Arvin stock. Arvin also seeks costs and

attorneys fees incurred in bringing this action, and has asked for a jury trial as to all issues properly triable by a jury. Arvin has not yet asked for a preliminary injunction hearing.

Wanandi has again moved to dismiss the Amended Complaint, and the questions raised have been fully and thoroughly briefed. The motion raises a number of difficult issues which, after setting forth the relevant facts, the Court will address individually.

## II. *Facts:*

The well-pleaded facts of this case, as taken as true on this motion to dismiss for failure to state a claim,[1] are as follows:

Plaintiff Arvin Corporation is an Indiana Corporation with its principal offices in Columbus, Indiana. Arvin is a diversified manufacturing company supplying a variety of products and services including automotive parts and research and development for the government. One of Arvin's businesses, Calspan, is a major defense contractor engaged in secret and highly sensitive work for the United States' armed services. Arvin's common stock is listed on the New York Stock Exchange and is registered with the Securities and Exchange Commission. As of January 1, 1988, there were approximately 18.8 million shares of Arvin common stock outstanding.

Defendant Ismanto Wanandi is a 33 year-old Indonesian resident. Wanandi is chairman of an Indonesian entity known as P.T. Gemala Kempa Daya ("Gemala"). Approximately 45% of Gemala is owned by an Indonesian company controlled by the "Astra Group," an Indonesian business group managed by the Soeradjaya family. Wanandi is an agent of Gemala, which in turn is controlled by the Astra Group and the Soeradjaya family.

Wanandi and his family members have diverse business interests in Indonesia including military-related concerns. Indonesian government entities and/or employees control a significant portion of the equity of certain Wanandi group companies. The Wanandi group companies are closely allied by cross-ownership stakes and interlocking management arrangements to the Astra group. The Gemala company is engaged in the manufacture and distribution of automotive parts. Defendant Wanandi is one of six brothers. Several of the Wanandi brothers have close ties to the Indonesian military.

At a date unknown to the plaintiff but before June 24, 1988, Wanandi agreed with one or more Indonesian businessmen representing Wanandi group and Astra group interests to pursue a plan to cause Arvin to enter into a business arrangement with Gemala. Defendant Wanandi agreed to act as the publicly identified vehicle for this plan, but at all relevant times Wanandi has acted as the representative and agent for Indonesian business interests in addition to his personal interests.

In accordance with this program, Wanandi entered into an agreement with Chase Manhattan Bank on June 24, 1988, pursuant to which Chase agreed to act as "exclusive financial advisor" to Wanandi "in connection with the proposed acquisition" by Wanandi of Arvin common stock, "or any other effort to obtain control of" Arvin. Under the Chase Agreement, Chase Manhattan is entitled to 10% of any profits realized by Wanandi on the sale of his Arvin stock holdings. Under the Agreement and subsequent accords, Chase Manhattan is authorized to "act upon any and all instructions ... given or purported to be given by Wanandi or Mr. Thomas J. Scott." Scott is an American citizen who operates through an entity called International Merchants in Suffolk County, New York.

---

1. In addressing this Rule 12(b)(6) motion, this Court must accept all well-pleaded facts as true. *Indiana National Corp. v. Rich,* 712 F.2d 1180, 1182 (7th Cir.1983); *City of Evanston v. Regional Transportation Authority,* 825 F.2d 1121, 1122 (7th Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988). The test under Rule 12(b)(6) is whether it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); 5 Wright and Miller, *Federal Practice and Procedure* § 1357.

In order to finance his stock accumulation program, Wanandi entered into a financing arrangement dated July 16, 1988, with the Singapore branch of CIC–Union Europeene ("CIC"). CIC is a France-based bank that does business in the United States through a New York office. CIC agreed to lend Wanandi up to $15,000,000 for the purchase of Arvin stock, with Wanandi being required to pledge to CIC any and all Arvin securities actually purchased. The CIC Credit Agreement contains a representation and warranty by Wanandi that he is not subject to the United States margin credit requirements. Wanandi eventually borrowed $14.5 million to aid in his purchase of some $22 million worth of Arvin stock.

At a time unknown to Arvin, Mr. Wanandi began to accumulate Arvin stock. By August 16, 1988, Wanandi had purchased more than 300,000 shares. On October 4, 1988, Wanandi filed a notification with the Federal Trade Commission to permit him to acquire in excess of $15 million worth of Arvin's common stock. Shortly thereafter Wanandi contacted certain customers of Arvin and discussed Arvin's business affairs. Wanandi stated that he would acquire control of Arvin. His purchases of Arvin stock continued throughout the fall of 1988.

On January 26, 1989, Wanandi wrote James K. Baker, the Chairman and Chief Executive Officer of Arvin, and requested a meeting to discuss Wanandi's views concerning Arvin. No such meeting has taken place. In February of 1989, Wanandi purchased an additional 174,000 shares of Arvin stock. On February 20, 1989, Wanandi filed his initial Schedule 13D with the SEC on behalf of himself. Wanandi stated his purpose in buying the 5.6% of Arvin to be "investment, although

> Mr. Wanandi has considered, and will continue to consider, the possibility of a future acquisition of control of the Company, whether by means of a tender offer for all or a portion of the outstanding Common Stock, merger or other business combination, open market purchases, privately negotiated transactions or otherwise, or the development of another mutually-beneficial long-term business relationship with the Company. Mr. Wanandi has not made any definitive plans with regard to the foregoing, nor has he entered into any contracts, arrangements or understandings with any other party for such purpose except as otherwise specified herein, and he intends to continue to review and monitor his investment in the Company. Depending on market, general economic and his own business conditions, the availability of any necessary financing, prospects for and events affecting the Company, other opportunities available to him and other factors, Mr. Wanandi may from time to time, if appropriate opportunities to do so are available, purchase and sell securities of the Company on such terms and at such times as he considers desirable, with or without regard to a decision to seek or not to seek control of the Company. Mr. Wanandi has entered into the Engagement Letter and the Letter Agreement described in Item 6 hereof in connection with certain of the alternatives specified above.

The market in Arvin stock responded to Wanandi's initial Schedule 13D with increases in volume and price. On February 24, 1989, Arvin filed its initial Complaint in this action, alleging, among other things, that the initial Schedule 13D filing was false and misleading in that it failed to disclose Wanandi's relationship to the Indonesian military and the barriers, in the form of United States regulations and policies, that could prevent an acquisition of Arvin by Wanandi. On March 3, 1989, Wanandi filed an amended Schedule 13D, and added the following statement:

> Mr. Wanandi, however, currently has determined that, in any event, he is uninterested in obtaining control of the Company's defense-related businesses and that, if he subsequently determines to acquire control of the Company, any such acquisition would be structured in such a manner that he would not acquire control of such businesses.

The amended Schedule 13D also contained a summary of the allegations of Arvin's

initial Complaint and attached a copy of the Complaint as an exhibit.

Based on these facts, Arvin asserts the various theories of relief set forth previously in this Order. The Court will address each theory separately below.

### III. *The Section 13(d) Claims:*

Section 13(d) of the Securities Exchange Act, which is codified at 15 U.S.C. § 78m(d), requires any person acquiring a beneficial ownership of more than 5% of a class of registered stock in a company to make certain filings and disclosures with the issuer of the security, the exchange where the security is traded, and the Securities and Exchange Commission. Specifically, within ten days of acquiring more than 5% of the stock the acquirer must send these parties a statement describing:

(A) the background, and identity, residence, and citizenship of, and the nature of such beneficial ownership by, such person and all other persons by whom or on whose behalf the purchases have been or are to be affected;

(B) the source and amount of the funds ... used in making the purchases;

(C) if the purpose of the purchases or prospective purchases is to acquire control of the business...., any plans or proposals which such persons may have to liquidate such issuer, to sell its assets to or merge it with any other persons, or to make any other major change in its business or corporate structure;

(D) the number of shares of such security which are beneficially owned ...; and

(E) information as to any contracts, arrangements, or understandings with any person with respect to any securities of the issuer, including but not limited to transfer of any of the securities, joint ventures, [etc.]....

15 U.S.C. § 78m(d)(1)(A–E).

This provision was passed by Congress as part of the Williams Act in 1968. The purpose of the Williams Act was "to insure that public shareholders who are confronted by a cash tender offer for their stock will not be required to respond without adequate information regarding the qualifications and intentions of the party." *Ron-*

*deau v. Mosinee Paper Corp.,* 422 U.S. 49, 58, 95 S.Ct. 2069, 2075–76, 45 L.Ed.2d 12 (1975). "By requiring disclosure of information to the target corporation as well as the Securities and Exchange Commission, Congress intended to do no more than give incumbent management an opportunity to express and explain its position." *Id.* "Congress expressly disclaimed an intention to provide a weapon for management to discourage takeover bids or prevent large accumulations of stock...." *Id.* "Indeed, the Act's draftsmen commented upon the 'extreme care' which was taken 'to avoid tipping the balance of regulation either in favor of management or in favor of the person making the takeover bid.'" *Id.,* citing S.Rep. No. 550, 90th Cong., 1st Sess., 3 (1967); H.R.Rep. NO. 1711, 90th Cong., 2d Sess. 4 (1968) U.S.Code Cong. & Admin.News 1968, p. 520. *Accord, Indiana National Corp. v. Rich,* 712 F.2d 1180, 1183 (7th Cir.1983) (purpose of Williams Act was protection of shareholders via better information).

■ In this case Arvin, which has standing to assert an implied private cause of action for injunctive relief under Section 13(d), *Indiana National Corp.,* 712 F.2d 1180 (Seventh Circuit holds that target corporation can sue for injunctive relief under § 13(d)), asserts that Wanandi has violated the reporting requirements in several ways. Wanandi defends arguing that the allegations fail to state claims for relief, and that by filing his amended Schedule 13's he has mooted the issues anyway. Each issue must be addressed separately.

A. The Rule 12(b)(6) motions regarding § 13(d) disclosures:

1. *Arvin has stated a claim under § 13(d) as to Wanandi's disclosure of his military affiliations, his financial background information, and his actual purpose in buying Arvin stock—the defendant's arguments on these three claims involve factual determinations that are inappropriate under Rule 12(b)(6).*

■ The defendant's basic response to these three § 13(d) claims is the same. In

essence Mr. Wanandi's argument is that Arvin's allegations are untrue. He asserts, for instance, that his plans with regard to the Arvin stock are "tentative" and "unformed," and that as a result he is under no obligation under § 13(d) to disclose more than he has. (*See Def.'s Memorandum of March 7, 1989*, p. 13.[2] Arvin's Amended Complaint, however, specifically alleges (and with great particularity) that his plans are *not* tentative and unformed, but rather that his intent to force Arvin into an agreement was solidified some time ago. Wanandi's arguments thus go to the merits of the claims rather than the issue of whether Arvin has stated a claim.

As such, these arguments must be rejected at this initial stage. In ruling on a Rule 12(b)(6) motion, the Court must take all well-pleaded facts as true and take all inferences favorably for the plaintiff. *See supra* note 1. Because of this, the federal courts have been reluctant to dismiss well-pleaded § 13(d) claims at the Rule 12(b)(6) juncture. *See, e.g., Warner Communications, Inc. v. Murdoch*, 581 F.Supp. 1482, 1501–02 (D.Del.1984); *Securities & Exchange Commission v. GSC Enterprises*, 469 F.Supp. 907, 913–14 (N.D.Ill.1979); *Pabst Brewing Co. v. Jacobs*, [1982–83 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 99,042, 94,951 (D.Minn.1982); *Foster Wheeler Corp. v. Edelman*, No. 87–4346, slip op. at 9–11 (D.N.J. Dec. 9, 1987). This trend is not surprising given the fact that the completeness and accuracy of § 13(d) filings raise factual issues of intent, motive, and materiality, all of which are usually mixed questions of fact and law, *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976), and as such are inappropriate for 12(b)(6) adjudication.

Moreover, the specific requirements of a Schedule 13D must be read together with S.E.C. Rule 12b–20, which requires disclosure of "such further material information" as is necessary to make the statements required by other rules not misleading in light of the circumstances. *See* 17 C.F.R. § 240.12b–20. A fact is material under the securities laws "if a substantial likelihood exists that a reasonable investor would find the omitted or misstated fact significant in deciding whether to buy or sell a security." *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1233 (7th Cir.1988). In this case the allegations with respect to Wanandi's disclosure of his affiliations, his financial resources, and his purpose in acquiring more than 5% of Arvin's stock raise factual issues of materiality that cannot be decided on a 12(b)(6) motion. The fact that Wanandi denied such allegations in his first Amended Schedule 13D filing does not change the analysis at the Rule 12(b)(6) stage.

2. *Arvin has not stated a claim regarding Wanandi's failure to disclose his alleged violations of the margin requirements.*

■ In Count Six of the Amended Complaint, Arvin charges Wanandi with failing to disclose in his Schedule 13D filing that he has violated the margin requirements of Section 7(f) of the Act. Specifically, Arvin alleges that Wanandi's Schedule 13D filings "fail to disclose the fact that Wanandi's borrowings ... violate Section 7(f) of the 1934 Act ... and the margin regulations thereunder...." (Amended Complaint, ¶ 77). Arvin's allegations, however, fail to state a claim for relief.

Section 13(d) does not require a shareholder to confess wrongdoing when such wrongdoing has not been established as a fact. In this case there is a legitimate dispute as to whether Wanandi has violated the margin requirements; the issue has not yet been addressed by any judicial or administrative body, and until such time that it is, Arvin's claim of margin violations are unproven legal conclusions and nothing

---

2. On the same page Wanandi states that "there is no requirement in Schedule 13D that an investor, who is merely considering the possibility of seeking control of an issuer, must disclose his private finances." However, the Amended Complaint clearly does not allege that Wanandi is "merely considering the possibility of seeking control," but rather makes specific allegations throughout that Wanandi and his affiliates have entered into a deliberate course of action for a particular purpose.

more. Arvin is correct that it has standing to bring a § 13(d) claim based on an investor's failure to disclose allegations of margin violations. *See, e.g., Koppers Co., Inc. v. American Express Co.,* 689 F.Supp. 1371, 1397 (W.D.Pa.1988); *Revlon, Inc. v. Pantry Pride, Inc.,* 621 F.Supp. 804, 814 (D.Del.1985). That there is standing to sue for nondisclosure of the allegations, however, does not mean that Arvin has stated a claim for relief in this case in which Wanandi has disclosed the existence of the margin allegations.

■ Indeed, there is a limitation on the duty to disclose under the Williams Act. Where there is a good faith dispute as to an alleged legal violation, the Act only requires disclosure of the dispute. *City Capital Associates Ltd. v. Interco, Inc.,* 696 F.Supp. 1551, 1556 (D.Del.1988); *Warner Communications, Inc. v. Murdoch,* 581 F.Supp. 1482, 1502 (D.Del.1984); *Avnet, Inc. v. Scope Industries,* 499 F.Supp. 1121, 1124–26 (S.D.N.Y.1980). "There are good reasons for this limitation," [for] [a] "tender offeror should not be placed in a position of being forced to either admit liability, while he or she disputes it, or violate the securities law by failing to disclose the alleged and disputed violation." *Interco,* 696 F.Supp. at 1556–57. As long as the potential suitor discloses to the target that a good faith dispute exists as to an alleged violation of law, "a shareholder has sufficient information to make a rational and informed decision whether to tender his or her shares." *Id.* at 1557.

In this case Mr. Wanandi has disclosed the existence of the dispute over the margin requirements in his Amended Schedule 13D, which was filed on March 3, 1989. Because the Amended Complaint is based upon the text of this disclosure, this Court can refer to the text and exhibits of the Amended 13D filing in determining the sufficiency of the Amended Complaint. *Ed Miniat, Inc. v. Globe Life Ins. Group,* 805 F.2d 732, 739 n. 12 (7th Cir.1986), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987); *Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1015 (1st Cir. 1988), *cert. denied,* — U.S. ——, 109 S.Ct.

65, 102 L.Ed.2d 42 (1988). The Amended Schedule 13D filing summarizes the allegation regarding the margin requirements and attaches a copy of the Amended Complaint. By so doing, Wanandi satisfied, as a matter of law, the disclosure requirements regarding the alleged margin violation. *Cf., Amanda Acquisition Corp. v. Universal Foods Corp.,* 708 F.Supp. 984, 993 (E.D.Wis.1989) (disclosure of alleged margin violations, without actually admitting violations, satisfies disclosure requirements for Schedule 14D–1). Arvin thus fails to state a claim for relief in Count Six.

**B. Mootness:**

Wanandi alternatively defends the three remaining Section 13(d) disclosure claims on the grounds that by filing his Amended Schedule 13D he has mooted the alleged disclosure violations. The gist of Wanandi's argument here is that "once shareholders have received all of the information to which they are entitled, an issuer's claim under Section 13(d) is typically rendered moot." (Memorandum of March 7, 1989, at 26).

Although Wanandi has raised this issue in his Rule 12(b)(6) motion, mootness actually goes to the Court's subject matter jurisdiction under Article III of the Constitution, *see generally* 13A Wright, Miller and Cooper, *Federal Practice and Procedure* § 3533, p. 211–12; *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971), and as such is properly raised under Rule 12(b)(1). "Because of the importance of the Rule 12(b)(1) defense, [however], courts should treat an improperly identified motion that actually challenges the court's authority or competence to hear the action as if it properly raised the jurisdictional point." 5 *Wright and Miller* § 1350 at 546. This Court is guided by this proposition and accordingly treats the mootness issue as though it had been asserted under Rule 12(b)(1). *Accord, USG Corp. v. Wagner & Brown,* 690 F.Supp. 625, 626 (N.D.Ill.1987) (court considers mootness issue raised via a 12(b)(6) motion as properly raised under 12(b)(1) standards).

■ A case is said to be moot and thus nonjusticiable if it fails to present a live controversy to the adjudicating court. *National–Standard Co. v. Adamkus*, 881 F.2d 352, 356 (7th Cir.1989). As the Supreme Court has written, "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (citation omitted). The key is whether the parties "will be affected by any view this Court might express on the merits of this controversy." *City of Milwaukee v. Block*, 823 F.2d 1158, 1163 (7th Cir.1987) (citation omitted).

■ In ruling on a mootness defense, the Court can consider items outside the pleadings. *USG Corp.*, 690 F.Supp. at 626. The burden of proof, however, is on the defendant, and is said to be "a heavy one." *Davis*, 440 U.S. at 631, 99 S.Ct. at 1383; *Adamkus* at 356; *Selelyo v. Drury*, 508 F.Supp. 122, 125 (S.D.Ohio 1980).

■ The federal courts have considered the mootness doctrine in relation to Section 13(d) claims on a number of occasions, which should not be surprising given that a "frequent response to 13D litigation is to attempt to 'moot' the claim by amending the Schedule 13D in question to correct the allegations of faulty or incomplete disclosure." Nussbaum, *Substantive and Disclosure Requirements under the Williams Act*, 568 Corp.Law Practice Handbook 301 (1987 Practicing Law Institute). The responses of the courts to these arguments, however, have not been uniform.

On the one hand, a number of district courts have held that where a defendant files an amended Schedule 13D and discloses the existence of a dispute about the facts alleged, that defendant has "cured" the § 13(d) allegations and the injunctive relief suit is without further purpose. The most recent example of this is *Weeden v. Continental Health Affiliates, Inc.*, 713 F.Supp. 396 (N.D.Ga.1989). In *Weeden*, the court rejected the issuer's argument that an amended Schedule 13D would have to disclose the facts themselves, not merely the existence of a dispute concerning the facts. The *Weeden* court thus held that the disclosure requirements were satisfied when the defendant amended its filing to reveal the dispute over its financing arrangements.

Similar holdings are found in several other district court opinions. *See Hubco, Inc. v. Rappaport*, 628 F.Supp. 345, 357 (D.N.J. 1985) ("any failure to disclose the source and amount of funds ... has been cured in amendments to the original 13D, which append all applicable margin agreements and line of credit documents...."); *Energy Ventures, Inc. v. Appalachian Co.*, 587 F.Supp. 734, 743 (D.Del.1984) ("Once there has been compliance with Section 13(d) through a corrective filing, the purpose of the law has been fully served and there is no threat of continuing harm to the issuing corporation or its shareholders...."); *Avnet, Inc. v. Scope Industries*, 499 F.Supp. 1121, 1125 (S.D.N.Y.1980). *Cf., Condec Corp. v. Farley*, 573 F.Supp. 1382, 1387 (S.D.N.Y.1983) (denial of *preliminary injunction* on ground that amended filing cured the allegations).

To the contrary are a number of other district court opinions and a few circuit court decisions. For instance, in *Liberty National Ins. Holding Co. v. Charter Company*, 734 F.2d 545, 560 n. 31 (11th Cir.1984), the Eleventh Circuit rejected a mootness argument on the grounds that the plaintiff sought more than just an accurate 13D statement. Rather, the plaintiff there, as in this case, sought to preclude the defendant from acquiring or attempting to acquire any shares of the target company, among other things. *Id.* Thus, the Eleventh Circuit reasoned, the amendment of the Schedule 13D reproducing all of the plaintiff's allegations did not remove all the controversies from the case. This reasoning seems to be applicable here as Arvin seeks more than just an accurate Schedule 13D.

The only decision on point located from this Circuit supports the plaintiff's arguments. In *USG Corp. v. Wagner & Brown*, 690 F.Supp. 625 (N.D.Ill.1987), Judge Holderman rejected the defense ar-

gument that an amended Schedule 13 mooted the plaintiff's cause of action. In so doing, he reasoned much like the Eleventh Circuit did by noting that "an issuing corporation's remedies for a Section 13(d) violation are not limited to curative disclosure." *USG*, 690 F.Supp. at 627. "Filing a completely truthful Schedule 13D does not necessarily remedy the injuries suffered by shareholders who relied on the misstatements or omissions in the original Schedule 13D." *Id.* Thus, Judge Holdermann held, "that defendants eventually brought to the attention of the SEC and the shareholders in its fourth Schedule 13D the fact that plaintiffs disputed the truth and completeness of the previous filings" did not render the action moot. *Id. See also Warner Communications, Inc. v. Murdoch,* 581 F.Supp. 1482, 1500–01 (D.Del.1984). *Cf., Dan River, Inc. v. Unitex, Ltd.,* 624 F.2d 1216 (4th Cir.1980) (refusing to dismiss without discovery on issue of completeness of Schedule 13D filing), *cert. denied,* 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 827 (1981).

This Court finds the reasoning of these latter decisions more persuasive in this particular case. First, the allegations as to military ties, financial background, and purpose in buying Arvin stock could well be material in a stockholder's decision to invest, hold, or dispose of Arvin stock. That Wanandi vigorously denies such allegations in his amended Schedule 13D does not diminish the materiality of such claims; if they are true, the stockholders may be entitled to know. It is this Court's opinion that merely informing the public of the existence of the dispute is not enough to make the case nonjusticiable. Second, this case is postured in such a way that Arvin seeks more than just an adequate and accurate disclosure. Rather, as in *Liberty National* and *USG Corp.,* plaintiff here seeks broad declaratory and injunctive relief.

Accordingly, this Court holds that defendant has not met his burden to show that this cause of action has been mooted by his amended filings. Should he be able to prove this in the future he would, of course, be entitled to raise the issue at any time, including on appeal. For now, though, a controversy remains to be adjudicated.

IV. *The Section 13(d)(3) Claim:*

In Count Two of its Amended Complaint, Arvin charges Wanandi with violating Section 13(d)(3) of the Act, which reads as follows:

> When two or more persons act as a partnership, limited partnership, syndicate or other group for the purpose of acquiring, holding or disposing of securities of an issuer, such syndicate or group shall be deemed a "person" for the purposes of this subsection.

15 U.S.C. § 78m(d)(3). Arvin claims that Wanandi is a member of a group that includes Gemala, members of the Soeradjaya family, and members of the Astra group. Moreover, Arvin asserts that Wanandi's stock purchases have been made pursuant to an agreement among the undisclosed group members, and that the group is required to but has failed to file a Schedule 13D containing information about the group members.

Wanandi assails this Count of the Amended Complaint on the grounds that Arvin has failed to plead the elements of a violation of Section 13(d)(3). To the contrary, however, Arvin has specifically alleged the nature of the agreement in paragraph 50 of the Amended Complaint. The cases cited by Wanandi are either factually distinguishable [3] or are inapposite because they were decided in the Second Circuit, which uses a much stricter standard of pleading under Rule 9(b) than the Seventh and other Circuits.[4] Defendant's dispute

---

**3.** *See, e.g., Segal v. Gordon,* 467 F.2d 602 (2d Cir.1972) (district court specifically converted motion to dismiss to motion for summary judgment, and the complaint simply failed to allege sufficient facts to support the group claim).

**4.** As noted in *Caliber Partners, Ltd. v. Affeld,* 583 F.Supp. 1308, 1311 (N.D.Ill.1984), the Second

Circuit's solitary viewpoint on specificity of pleading under Rule 9(b) is against the "clear weight of authority." *See also Banowitz v. State Exchange Bank,* 600 F.Supp. 1466, 1469 (N.D.Ill. 1985) (noting that Seventh Circuit has interpreted Rule 9(b) liberally).

about the existence of such an agreement can be raised via summary judgment or on the merits, but it cannot be entertained on this motion to dismiss.

### V. *The Section 9(a) Claim:*

■ In Count Three of its Amended Complaint, Arvin charges Wanandi with violating Section 9(a) of the Act (15 U.S.C. § 78i(a)) by making secret accumulations of stock and filing false and misleading Schedules in order to cause Arvin to fear takeover and enter into a business relationship with Wanandi and his affiliates. Wanandi defends this claim by arguing that Arvin, as an issuer of the securities rather than a purchaser or seller, lacks standing to bring an action under Section 9(a). For the reasons set forth below, the Court agrees with Wanandi on this issue and must dismiss the 9(a) claim.

Section 9(a) of the 1934 Act makes it unlawful

> for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange ... to make, regarding any security registered on a national securities exchange, for the purpose of inducing the purchase or sale of such security, any statement which was at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, and which he knew or had reasonable ground to believe was so false or misleading.

15 U.S.C. § 78i(a)(4). The purpose of this section is to prevent rigging of the market and to permit the natural law of supply and demand to operate efficiently. *United States v. Stein,* 456 F.2d 844, 850 (2d Cir.), *cert. denied,* 408 U.S. 922, 92 S.Ct. 2489, 33 L.Ed.2d 333 (1972).

By its own terms, Section 9(a) applies to manipulation "for the purpose of inducing the purchase or sale of [a] security...." 15 U.S.C. § 78i(a)(4). Indeed, Section 9(e) of the Act provides that any person who violates Section 9(a) shall be liable "to any person who shall purchase or sell security at a price which was affected by such act

or transaction, and the person so injured may sue in law or equity...." 15 U.S.C. § 78i(e). Thus, the plain language of the statute indicates that Arvin lacks standing under this Section 9(a) because it has not alleged that it purchased or sold Arvin stock because of the alleged misrepresentations.

Moreover, Arvin has been unable to cite any decision holding that a non-purchasing or non-selling issuer can bring an action for injunctive relief under Section 9(a), and this Court has been unable to locate any on its own. To the contrary, what case law there is on this subject supports the straightforward interpretation of the statute that precludes an issuer from seeking relief under Section 9(a). *See, e.g., Chemetron Corp. v. Business Funds, Inc.,* 682 F.2d 1149, 1161–62 (5th Cir.1982) (Section 9(a), as enforced through 9(e), requires action for the purpose of inducing a sale or purchase of a security on which the plaintiff relied and that affected the plaintiff's purchase or selling price), *rev'd and remanded on other grounds,* 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476 (1983); *Atlantic Federal Savings & Loan v. Dade Savings & Loan,* 592 F.Supp. 1089, 1092 (S.D.Fla.1984) (Section 9(a) requires a purchaser or seller); *Richardson v. Shearson/American Express Co.,* 573 F.Supp. 133, 135–36 (S.D.N.Y.1983) (failure to allege purchase or sale of stock precludes Section 9(a) action); *Copperweld Corp. v. Imetal,* 403 F.Supp. 579, 595 (W.D.Pa.1975) ("Section 9(e) unequivocally states that one shall purchase or sell the security before that person can assert the liability of another under subsection a."); *DuPont v. Wyly,* 61 F.R.D. 615, 630 (D.Del.1973) (same); *Foster Wheeler Corp. v. Edelman,* No. 87–4346, slip op. at 4–6 (D.N.J. Dec. 9, 1987) (same).

Accordingly, plaintiff fails to state a claim for relief under Section 9(a) of the Act, and Count Three must therefore be dismissed.

### VI. *The Section 7(f) Claim:*

■ In Count Five of its Amended Complaint, Arvin charges Wanandi with violating the margin requirements promulgated under Section 7(f) of the Act (15 U.S.C.

§ 78g(f)) by using 14.5 million dollars of credit from a foreign lender to purchase 22.5 million dollars of Arvin stock. Arvin claims that Wanandi has violated Section 7(f) and Regulation X promulgated thereunder, which prohibit a borrower from obtaining foreign credit in excess of 50% of the value of publicly traded stock that secures the borrowing. Wanandi defends this claim arguing that Arvin lacks the right to bring an implied private cause of action under Section 7(f).

Section 7(f) of the Act and the regulations thereunder state what types of credit arrangements are unlawful in connection with the purchase of securities. The express purpose of the margin requirements is to prevent "the excessive use of credit for the purchase or carrying of securities...." 15 U.S.C. § 78g(a). Unfortunately, as with many of the provisions governing securities, Section 7(f) does not state whether an issuer or other party may bring an action to enforce the statute and its regulations. Thus, this Court must determine whether a target corporation has an implied right to bring an action for injunctive relief under Section 7(f).

This is a difficult task in this case, for as one of the few Court of Appeals that has even had occasion to mention this precise issue has noted, an issuer's "standing to assert substantive margin claims is ... a close question." *Interco, Inc. v. Cardinal Acquisition Corp.*, 858 F.2d 444, 445 (8th Cir.1988).[5] While the federal courts have addressed whether a *borrower* can bring an action to enforce the margin requirements, *See, e.g., Bassler v. Central National Bank*, 715 F.2d 308 (7th Cir.1983) (rejecting cause of action), there is but sparse case law squarely on point concerning an issuer's right to bring an action. Moreover, most of the law on this narrow question comes from district courts, and it is in sharp conflict.

On the one hand, for instance, Judge Stadtmueller of the Eastern District of

Wisconsin recently held that a target corporation does not have a right of action under Section 7 of the Act. *See Amanda Acquisition Corp. v. Universal Foods Corp.*, 708 F.Supp. 984, 993 (E.D.Wis.1989). Although the Seventh Circuit recently heard and decided the *Amanda Acquisition* case on expedited appeal, the Seventh Circuit did not address the implied right of action issue as it disposed of the case on constitutional grounds. *Amanda Acquisition Corp. v. Universal Foods Corp.*, 877 F.2d 496 (7th Cir.1989). The Third Circuit has similarly noted, though without great discussion and while citing to a case that is not on point, that a target corporation has no implied right of action for a margin violation. *See Polaroid Corp. v. Disney*, 862 F.2d 987, 1004 n. 15 (3d Cir.1988).

On the other hand, the district court in *Koppers Co., Inc. v. American Express Co.*, 689 F.Supp. 1417, 1418–19 (W.D.Pa. 1988), held that a target corporation can bring an action for injunctive relief under Section 7. *Accord, Pabst Brewing Co. v. Jacobs*, [1982–83 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 99,042, 94,951 (D.Minn. 1982). Given the split in what sparse case law there is, this Court must engage in an analysis of the tests for implying a private cause of action and determine whether a plaintiff such as Arvin can seek injunctive relief under Section 7(f).

This inquiry is guided by the decision in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), wherein the Supreme Court set forth four specific factors to be examined in determining whether a private remedy is implicit in a statute not expressly providing for one. Those factors are: (1) is the plaintiff one of the class for whose especial benefit the statute was enacted; (2) is there any indication of legislative intent, explicit or implicit, to create or deny such a remedy; (3) is it consistent with the underlying purpose of the legislative scheme to imply such a remedy; and (4) is the cause of action traditionally relegated to state law. *Cort*, 422 U.S. at 78, 95 S.Ct.

---

**5.** The Eighth Circuit made this passing reference in a two-page opinion affirming a district court's stay of an issuer's against a suitor. The Eighth Circuit was merely deciding that the district court had not abused its discretion; thus, the decision itself does not carry any weight on today's issue.

at 2088. Obviously only the first three factors have any relevance in this setting.

Since the *Cort* decision, the Supreme Court and Seventh Circuit have placed the greatest emphasis on the second factor—that is, is there any indication of legislative intent one way or another on the issue. *See Bassler,* 715 F.2d at 310 (listing cases). As the Seventh Circuit stated in *Bassler,* " 'All four *Cort* factors are not equally weighted; the central inquiry is whether Congress intended to create a private right of action.' " 715 F.2d at 310 (*quoting Allison v. Liberty Savings,* 695 F.2d 1086, 1088 (7th Cir.1982)).

In this case this Court is persuaded that Congress did not intend to create a private right of action. First, there is nothing in the statute itself that suggests an issuer has a right of action. Had Congress intended to create such a right, it could have easily done so as it did in other provisions of the securities laws such as Section 9(a). Second, there is nothing in the legislative history to suggest that Congress had issuers in mind when it enacted the margin requirements. To the contrary, the "main purpose" of the depression-era legislation was to

> give a Government credit agency an effective method of reducing the aggregate amount of the nation's credit resources which can be directed by speculation into the stock market and out of other more desirable uses of commerce and industry—to prevent a recurrence of the pre-crash situation where funds which would otherwise have been available at normal interest rates for uses of local commerce, industry, and agriculture, were drained by for higher rates into security loans and the New York call market.

H.R.Rep. No. 1383, 73d Cong., 2d Sess. 8 (1934). The goal of the statute was thus to "promote the nation's financial health . . . ," *Bassler,* 715 F.2d at 313, rather than to afford issuer's any rights.

Third, there is nothing unique about an issuer that would suggest it was meant to get special protection under the margin provisions. The aim of the statute was stabilization of the national credit markets and the economy; not protection from takeovers. Yet Arvin now seeks to use the statute to fend off a potential takeover or acquisition of a large portion of its stock. Congress, however, has provided for corporations in Arvin's shoes in other provisions such as Section 13(d).

Fourth, this Court finds unpersuasive the argument that because several cases had allowed an implied right of action to others (all non-issuers) prior to the 1968 and 1970 amendments to Section 7, Congress implicitly approved of that interpretation in making its amendments without discussing the issue. As Judge Stadtmueller wrote in rejecting the same contention, "I find no authority suggesting that any court ever considered that issuer standing might even be possible under the statute prior to the amendments." *Amanda Acquisition,* 708 F.Supp. at 993. "Rather, it appears that issuers' rights are simply not within the contemplation of the statute." *Id.*

Fifth, this Court rejects the argument that this particular statute would be without purposeful meaning if an issuer cannot bring an action to enforce it. The "statute and regulations are distinctly regulatory," *Id.* at 992, and as such, and without more, are to be enforced by an arm of the government. The fact that Federal Reserve Board chooses not to strictly enforce the provisions and takes the official position that an implied right of action should exist[6] does not speak to whether the *legislature* provided a remedy. In our system of government, the three branches still retain significant independence.[7] The Executive

---

**6.** The Federal Reserve Board has confirmed its position on this issue several times. *See* Release of the Board of Governors of the Federal Reserve System (Jan. 10, 1986), [1985–86 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 83,952, 87,962; *Koppers Co., Inc. v. American Express Co.,* 689 F.Supp. 1408, 1413 (W.D.Pa.1988) (letter from

General Counsel of Federal Reserve stating that "the Board has repeatedly advanced the view over the years that a private action under the margin regulations is an important mechanism for effective enforcement. . . .").

**7.** The Court recognizes that the Federal Reserve is one of those bodies that is not always easily

Branch has discretion in choosing what laws to enforce and how to enforce them, and is no doubt influenced by the political and economic climate of the day. Apparently today's climate justifies neither strict enforcement by the Board with its current staff nor additional funds from the legislative branch to aid in that enforcement. The aggrieved issuer's recourse in such a climate, absent an indication that Congress intended a judicial remedy, is through the political structure rather than the courts.

Finally, while this Court recognizes that this is, indeed, a close question, and that there is well-reasoned precedent on each side of the fence, the Court notes that the current trend, at least in this Circuit if not on a national level, seems to be away from implying private remedies where Congress has not spoken. *See, e.g., Bassler,* 715 F.2d 308; *Amanda Acquisition,* 708 F.Supp. 984; T. Hazen, *The Law of Securities Regulation* § 13.1 (L.Ed.1985) (discussing the "restrictive trend of the implication cases"). In light of this, even if the legislative intent question appeared to be more evenly drawn, this District Court would opt against finding an implied right of action in this case.

Accordingly, because this Court finds that Congress did not intend an issuer to have a private right of action under Section 7(f), Arvin's Claim for relief in Count Five must fail.

#### VII. *The Section 10(b) Claim:*

In Count Four of its Complaint, Arvin seeks injunctive relief under Section 10(b) of the Act, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder. Specifically, Arvin alleges that Wanandi has omitted to state material facts in his S.E.C. filings, that Wanandi's purpose has been to give the marketplace the false impression that a bona fide bid would be forthcoming, and that this conduct constitutes a device, scheme, or artifice to defraud Arvin under

Section 10(b). Wanandi defends by arguing that Arvin cannot bring such an action because it is not a purchaser or seller of the stock.[8]

This issue, much like the Section 7(f) question discussed above, has been squarely addressed by several federal courts, but not by the Seventh Circuit Court of Appeals. Some courts have held that an issuer has an implied right of action for injunctive relief under Section 10(b) notwithstanding that an issuer is technically not a "purchaser" or "seller." *See, e.g., USG Corp. v. Wagner & Brown,* 689 F.Supp. 1483, 1493–94 (N.D.Ill.1988); *Hanna Mining Company v. Norcen Energy Resources Ltd.,* 574 F.Supp. 1172, 1198 (N.D.Ohio 1982); *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 194–95 (3d Cir. 1976). Others have rejected such an implied right of action relying on *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), in which the Supreme Court held that a non-purchaser or non-seller cannot bring an action for damages under Section 10(b). *See, e.g., Equity Oil Co. v. Consolidated Oil & Gas, Inc.,* 596 F.Supp. 507, 513–14 (D.Utah.1983); *Atlantic Federal Savings & Loan v. Dade Savings & Loan,* 592 F.Supp. 1089, 1092 (S.D.Fla.1984); *Camelot Industries Corp. v. Vista Resources, Inc.,* 535 F.Supp. 1174, 1182 (S.D.N.Y. 1982).

This Court is perhaps leaning in favor of rejecting such a cause of action for many of the same reasons an issuer cannot bring a claim under Section 7(f). This Court also finds support for rejecting the 10(b) claim in *Cowin v. Bresler,* 741 F.2d 410, 419–425 (D.C.Cir.1984), wherein Judge Bork interpreted *Blue Chip* broadly and held that a non-purchaser/non-seller does not have a right to maintain an action injunctive relief under Section 10(b).[9] Also instructive is

pigeon-holed into one of the three branches of government.

**8.** Wanandi alternatively asserts that Arvin has failed to plead the fraud with particularity as is required by Rule 9(b). This Court rules, however, that Arvin has more than satisfied the

particularity requirements of Rule 9(b) in all Counts of its Amended Complaint.

**9.** This Court recognizes that *Cowin* did not involve an issuer, but finds the reasoning of that case applicable to the question presented in this case.

the Eleventh Circuit's decision denying an issuer a right of action for injunctive relief. *See Liberty National Insurance,* 734 F.2d 545, 555–59.

This Court, however, is hesitant to rule on this issue at this time without further briefing on this matter. In particular, the Court is concerned with a statement made by the Seventh Circuit in *Wright v. Heizer Corp.,* 560 F.2d 236, 246–47 (7th Cir.1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978), where it is said that while "only a defrauded purchaser or seller has standing to sue under Rule 10b–5[,] [a] corporation issuing securities, such as the warrants here, is a 'seller' of those securities for the purpose of the *Birnbaum* rule...." Prior to ruling on this Section 10(b) issue, the Court requests an additional memorandum not to exceed twenty-five pages addressing the questions of whether Arvin can be considered a "seller" under the statute, and whether the fact that Arvin seeks injunctive relief distinguishes this case from *Blue Chip* on a policy level. The Court commends the parties for their last round of briefs, but is interested in any additional authority, whether case law, commentary, or otherwise, that might shed additional light on how the Seventh Circuit would rule on this issue. Accordingly, the parties are to brief this narrow issue by August 18, 1989. No reply briefs will be required.

## VIII. *The Jury Trial Issue:*

■ In its prayer for relief, Arvin asks for a trial by jury "on all issues herein properly triable before a jury." As this case is postured in equity, there do not appear to be any such legal issues that would be tried to a jury. Accordingly, unless plaintiff can satisfy the Court by August 18, 1989, that any issues are triable to a jury, the plaintiff's demand for a jury will be stricken on the Court's own motion.[10]

---

10. Should Arvin make any filings with the Court on this issue, the defendant will, of course, be given the usual time to respond.

## IX. *Attorneys' Fees:*

Plaintiff also requests attorneys' fees in its prayer for relief. While fees may be recovered in a Section 9(a) suit pursuant to Section 9(e),[11] this Court has stricken the claim brought under that section, and is otherwise unaware of any provisions or authority for an award of attorneys fees in a case such as this. Moreover, the Court notes the Seventh Circuit's recent decision in *Champion Parts, Inc. v. Oppenheimer & Co.,* 878 F.2d 1003 (7th Cir.1989), wherein a plaintiff was unsuccessful in its attempt to get attorneys' fees for its successful prosecution of a Section 13(d) nondisclosure claim. Accordingly, unless the plaintiff can establish a basis for seeking attorneys' fees in this action by August 18, 1989, the Court will strike the prayer for such fees on its own motion.

## X. *Conclusion:*

In summary, Arvin has stated three claims for relief under Section 13(d), but its claims under Section 13(d)(3), Section 9(a), and Section 7(f) fail as a matter of law and are dismissed. The Court holds in abeyance the motion to dismiss Count Four pertaining to Section 10(b) and Rule 10b–5 pending further briefing by the parties, and the Court holds in abeyance its own motion to strike the jury trial demand and request for attorneys' fees to give plaintiff an opportunity to address these issues.

In order to expedite this cause of action, the Court now DENIES the motion to stay discovery. Plaintiff may renew its motion for expedited discovery if it desires.

The Court now sets this cause down for a conference of attorneys before the undersigned in Room 330, U.S. Courthouse, 46 East Ohio Street, Indianapolis, Indiana, on Tuesday, August 22, 1989, at 2:00 PM. Lead counsel for both parties shall be present and prepared to discuss all aspects of this case.

IT IS SO ORDERED.

---

11. Section 9(e) provides that the court may, "in its discretion, require an undertaking for the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant." 15 U.S.C. § 78i(e).

ADDENDUM OF SEPTEMBER 28, 1989

After issuance of the above Order, Arvin withdrew its demand for a jury trial and for attorneys' fees. The parties thoroughly briefed the remaining 10(b) issue, but before the Court could rule on that question, the parties settled the lawsuit. Under the terms of the settlement, Mr. Wanandi publicly agreed not to acquire Arvin stock for seven years.

The parties' original briefs on the remaining 10(b) issues are contained within the file in the office of the Clerk of this Court.